LEWIS E. ADKINS, Plaintiff-Appellant and Cross-Appellee, v. SARAH BUSH LINCOLN HEALTH CENTER, Defendant-Appellee and Cross-Appellant (G. D. Wright *et al.*, Defendants-Appellees).

Fourth District   No. 4—86—0752

Opinion filed July 23, 1987.—Rehearing denied September 9, 1987.

Richard H. Parsons, of Peoria, and Kent Masterson Brown, of Greenbaum, Young, Treitz, Maggiolo & Brown, of Lexington, Kentucky, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde and Daniel R. Simmons, of counsel), for appellees.

JUSTICE GREEN delivered the opinion of the court:

On July 27, 1984, plaintiff, Lewis E. Adkins, M.D., filed suit in the circuit court of Coles County against defendants, Sarah Bush Lincoln Health Center, an Illinois hospital corporation (health center), and various physicians and surgeons who were alleged to be on the health center's executive committee, and Martin E. Tullis, the health center's executive director. The gist of the action was the contention that defendants had illegally denied plaintiff's application for renewal of obstetrical and surgical privileges at the health center and illegally

imposed a second partial summary suspension on those privileges.

An amended complaint upon which judgment was entered consisted of three counts. Each count charged all of the defendants. The first count requested a declaration that the foregoing activities of defendants were invalid and a mandatory injunction upon the defendants to set those activities aside. The second count contended that the activities of the defendants were wilful and wanton and sought monetary damages for the injury allegedly imposed upon plaintiff. The last count alleged that the defendants, through their conduct in denying professional privileges to plaintiff, had conspired against him in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—3(1)) and sought treble damages against each of the defendants.

By a final judgment entered November 6, 1986, the circuit court: (1) dismissed the second and third counts against all defendants for failure to state a cause of action; (2) dismissed the first count against all individual defendants on the basis that the declaratory and injunctive relief requested in that count could be granted, if at all, only against the entity, the health center, which had acted to impose the summary suspension and deny renewal of plaintiff's professional privileges; (3) granted summary judgment to the health center in regard to its action in imposing a second summary suspension; but (4) granted plaintiff a summary judgment declaring the action of the health center in denying renewal of plaintiff's obstetrical and surgical privileges to have been improper and mandatorily enjoining that defendant to nullify that action.

Plaintiff has appealed and defendant health center has cross-appealed. We affirm in all respects.

■■ We examine first the issues upon which summary judgments were granted. The general rule has developed that courts will not intervene in disputes over peer review procedures of medical staffs of hospitals unless unfairness to the person being reviewed is shown to have resulted from failure of the hospital to follow its constitution or bylaws or from partiality or bias on the part of the group performing the review. (*Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 282 N.E.2d 728; *Maimon v. Sisters of the Third Order of St. Francis* (1983), 120 Ill. App. 3d 1090, 458 N.E.2d 1317; *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108.) Plaintiff's contention here is that the health center did not follow its own bylaws in performing the peer review.

The facts upon which the summary judgments were entered were undisputed. The health center bylaws required yearly application for membership and privileges. Plaintiff has been a member with surgical

and obstetrical privileges since 1977, but on May 9, 1983, a partial summary suspension was imposed upon him. The propriety of that action is not in issue. Then, in the fall of 1983, plaintiff reapplied for staff membership and renewal of his surgical and obstetrical privileges. On December 15, 1983, the health center's medical staff executive committee recommended that plaintiff be reappointed to the hospital medical staff, but that plaintiff's obstetrical and surgical privileges be denied. This recommendation was adopted by the board of directors the same day. Also on that day, another committee, consisting of the medical staff president, the chief of family practice and the executive director, met and imposed a second partial summary suspension on plaintiff. On plaintiff's request, the executive committee met on February 17, 1984, and heard arguments on behalf of plaintiff but recommended denial of plaintiff's request for termination of his suspension and for renewal of privileges. On May 24, 1984, the board of directors of the health center adopted and upheld the February 17, 1984, decision of the executive committee.

Article VIII, section 4(c), of the health center's bylaws which are applicable to executive committee hearings in regard to proceedings for renewal of privileges states:

> "When a hearing relates to an adverse recommendation of the executive committee, such hearing shall be conducted by an *ad hoc* hearing committee of not less than three (3) members of the medical staff appointed by the president of the medical staff in consultation with the executive committee, and one of the members so appointed shall be designated as chairman. *No staff member who has actively participated in the consideration of the adverse recommendation shall be appointed a member of this hearing committee* unless it is otherwise impossible to select a representative group due to the size of the medical staff." (Emphasis added.)

The record shows that plaintiff demanded the appointment of such an *ad hoc* committee but no such committee was appointed and the final determination as to plaintiff's privileges was made by a group including persons who had "actively participated in the recommendation" to deny privileges.

■ The health center does not deny the existence of the foregoing bylaw violation or that it would ordinarily vitiate the decision to deny privileges. However, the health center maintains that the issue of the propriety of the denial is moot here if the suspension is upheld. The suspension does prevent the plaintiff from exercise of his privileges during the existence of the suspension so that the practical ad-

vantage to the plaintiff of having privileges renewed while they are still suspended is of questionable value. However, a suspension is, by definition, a temporary rather than permanent status. Thus, for whatever advantage there is to plaintiff in having suspended privileges rather than none at all, he is entitled to such privileges. The summary judgment given plaintiff in this regard is affirmed.

■■ In regard to the continuation of the summary suspension imposed upon plaintiff, he does not contend that the series of hearings to which he was entitled under the bylaws were not held. Rather, he maintains that the hearings were not properly conducted. Plaintiff's major complaint is that the persons who were responsible for conducting the various hearings in regard to the suspensions were generally the same people who previously or simultaneously ruled against him in regard to the question of his suspension or the closely related question of renewal of his hospital privileges. He conceded at oral argument that article VIII, section 4(c) of the bylaws providing for creation of an *ad hoc* committee consisting of persons who have not previously participated in the proceedings against him is not applicable to the suspension appeals procedure. Lacking a requirement that persons involved in the appeals process have not made prior rulings on the matter, we cannot conclude that the bylaws have been violated. Nor can we determine that the persons ruling necessarily have partiality or bias because of their previous contact with the matter. To the extent that a person sitting on the panel has previous contact with the case, the procedure is a request for that person to reconsider.

■■ Plaintiff also complains that he was prejudiced at the February 17, 1984, executive committee hearing because article VIII, section 5(7) of the bylaws was not followed. That provision states:

> "The executive committee, when it is responsible for the initiation of the proceedings, must appoint one of its members to represent it at the hearing, to present the facts in support of its adverse recommendation, and to examine witnesses. It shall be the obligation of such representative to present appropriate evidence in support of the adverse recommendation or decision *** ."

The record indicates that no member was appointed to present the facts at that hearing, and no testimony of witnesses was presented. Rather, the committee examined charts concerning treatment of patients, and plaintiff was given opportunity to testify extensively. As no witnesses were presented in support of the recommendation to continue the suspension, plaintiff had no opportunity to cross-examine witnesses. However, the charts presented proper evidence for a pro-

ceeding of the nature involved, and no question of their authenticity was involved.

Plaintiff asserts that he was not given ample notice of the charges against him but there is no indication in the record that he ever objected before a hearing committee of that problem or requested a continuance for further preparation. Obviously, we cannot consider the sufficiency of the proof of the grounds for the continued suspension. *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 282 N.E.2d 728; *Maimon v. Sisters of the Third Order of St. Francis* (1983), 120 Ill. App. 3d 1090, 458 N.E.2d 1317.

The trial court properly granted summary judgment in favor of defendants in regard to the construction of the suspension.

■ Plaintiff does not dispute that the dismissal of the first count as to the individual defendants was proper as the declaration sought concerned the propriety of the health center as an entity and not the individual actions of the various other defendants, and the affirmative action which plaintiff requested the circuit court to order was action by the entity.

The second count of the amended complaint realleged all of the allegations of the first count which charged that the various defendants had violated the health center's bylaws in the manner which has been described and stated that their conduct in doing so was wilful and malicious. The count further alleged that the defendants had wilfully and maliciously attempted to convene license suspension hearings against plaintiff by public utterance to the press and by filing a report against plaintiff with the Illinois Department of Registration and Education falsely stating to that department that a final decision against plaintiff had been made when such was not then the case. The count referred to "Ill. Rev. Stat., ch. 111, sec. 16.04" as calling for reports from entities such as the health care center only from final determinations impairing a physician's or surgeon's privileges. Legislation designated as "Ill. Rev. Stat., ch. 111, sec. 16.04" does not exist. The intended reference was apparently section 16.04(a) of the Medical Practice Act (Ill. Rev. Stat. 1983, ch. 111, par. 4437(a)), which imposes upon the chief administrative or executive officer of entities such as the health center a duty to make such reports.

Plaintiff sought monetary damages in the second count for loss of that portion of his medical practice curtailed by the actions alleged and for damage to his reputation. Section 2b of the Medical Practice Act (Ill. Rev. Stat. 1983, ch. 111, par. 4406) provides immunity from civil liability for those serving on a medical review committee or providing service to such a committee for their conduct in connection

with their duties on such a committee unless the conduct is wilful and wanton. Thus, allegation and proof of such conduct is necessary if plaintiff is to recover any compensation from any of the individual defendants for their conduct as alleged in the first two counts of the amended complaint. However, in dismissing the second count, the circuit court concluded that it did not state a cause of action.

Plaintiff points out that section 2—612(b) of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b)) provides that a pleading is sufficient if it sets forth information reasonably informing "the opposite party of the nature of the claim or defense which he or she is called upon to meet." He also relies on the oft repeated statement in *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 305, 312 N.E.2d 259, 262, that "a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover." However, the foregoing must be considered in the light of the recent statement of the supreme court that "[f]act pleading, as opposed to notice pleading, is required in Illinois" and that facts must be alleged in order to bring a "claim within the scope of a legally recognized cause of action." *Teter v. Clemens* (1986), 112 Ill. 2d 252, 256, 492 N.E.2d 1340, 1342.

The major thrust of the second count is the contention that the various defendants wilfully and wantonly breached plaintiff's rights under the bylaws. Any error in ruling that wilful and wanton allegations were insufficient in regard to bylaw violations concerning the continuance of the summary suspension was rendered harmless by the summary judgment, which we have upheld finding that no bylaw violations occurred in that respect. In any event, no facts are alleged to show how any bylaw violation was wilfully and maliciously committed. The complaint does not allege whether any defendant knew that a bylaw was being violated, nor does it allege whether the violation was committed with the intent to injure plaintiff. As far as any member can be properly charged with being guilty of wilful and malicious conduct arising from committee action, logic would require that the complaint charge that the committee member voted for the action with the requisite mental state.

The allegation that all the defendants committed wilful and malicious conduct by utterance to the press is obviously too vague to charge a tort. Even the charge that all of the defendants sent a false report to the Illinois Department of Registration and Education is insufficient in that it fails to allege that a defendant sending such a report knew it was false.

The circuit court properly dismissed the second count.

■■ Finally, we consider the third count, which charges defendants with violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—3(1)), seeking treble damages. The count contends that the defendants combined and conspired with one another to boycott plaintiff, to exclude him from the patient market of Coles County and to restrict and destroy his ability to compete with them.

The United States Supreme Court has made clear that even such long recognized learned professions as the law (*Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004) and medicine (*Arizona v. Maricopa County Medical Society* (1982), 457 U.S. 332, 73 L. Ed. 2d 48, 102 S. Ct. 2466) are not immune under Federal antitrust law, and section 5 of the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—5) providing for exemptions makes no exemption for the medical profession except as to guidelines for determining charges (Ill. Rev. Stat. 1983, ch. 38, par. 60—5(12)). However, the third count seeks civil damages (Ill. Rev. Stat. 1983, ch. 38, par. 60—7(2)) rather than a criminal penalty. Accordingly, all of the members of the review committees have immunity from claim for such damages unless their conduct was wilful and wanton by the terms of section 2b of the Medical Practice Act (Ill. Rev. Stat. 1983, ch. 111, par. 4406). The third count incorporates the allegations of the second count but does not make further allegation that defendants' conduct was wilful and wanton or wilful and malicious. Thus, as to the defendant-physicians and surgeons, the third count suffers the same lack of factual pleading as the second count except to the extent that the allegations of conspiracy strengthen the charges of wilfullness and malice.

In *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463, the court held that great specificity is not required in alleging conspiracies which give rise to civil claims for damages under the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—1 *et seq.*). Here, specificity is almost totally lacking. The count does not say what the defendants agreed to do. It does not say whether they agreed to deny him a hearing before an *ad hoc* committee, whether they agreed to rule against him in the various hearings, whether they agreed to defame him in the media or whether they agreed to have an inaccurate and premature notice sent to the Department of Registration and Education. In *College Hills Corp.*, the complaint set forth the manner in which the defendants joined to put in force their plans to fix prices. Here, the defendants are not informed of the charges they need to defend against. See *Tru-Link Fence Co. v. Reuben H. Don-*

*nelly Corp.* (1982), 104 Ill. App. 3d 745, 432 N.E.2d 1188.

We hold that the third count also fails to set forth a cause of action and was properly dismissed. Accordingly, we need not consider whether any public service exception to the rule that learned professions are subject to antitrust laws renders defendants immune from antitrust liability because plaintiff was allegedly restricted in his ability to practice medicine in the process of a peer review of his capability. In both *Arizona v. Maricopa County Medical Society* (1982), 457 U.S. 332, 73 L. Ed. 2d 48, 102 S. Ct. 2466, and *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004, the court stated that alleged antitrust violations would be treated differently when the learned professions are involved and the conduct concerns public service or ethical standards. In *Weiss v. York Hospital* (3d Cir. 1984), 745 F.2d 786, *cert. denied* (1985), 470 U.S. 1060, 84 L. Ed. 2d 836, 105 S. Ct. 1777, the court held that when a claim of antitrust violations concerned the refusal of a hospital staff to admit a single osteopath to privileges on grounds of his incompetency, the learned profession exception would preclude operation of any *per se* rule that he was damaged.

As we have indicated, we affirm the judgment of the circuit court in its entirety.

Affirmed.

SPITZ, P.J., concurs.

JUSTICE LUND, dissenting in part and concurring in part:

Dr. Adkins practiced medicine in Coles County since 1954. He, evidently, had full privileges in the Charleston Hospital, which was one of the predecessors to the Sarah Bush Lincoln Health Center. He had full privileges at Sarah Bush until the first "Summary Suspension," which was imposed on May 9, 1983. Basically, the summary suspension prohibited surgical and obstetrical practice.

On December 15, 1983, two procedures were used to limit Dr. Adkins' practice at Sarah Bush, both with similar results. The first involved the annual reapplication to medical staff requirement, and the second was a repeat of the summary suspension procedure.

Reapplication to medical staff is provided by article V, section 3 of the Bylaws of the Medical Staff of Sarah Bush Lincoln Health Center of the Area E-7 Hospital Association (Bylaws). Article V, section 3(a) provides:

"a. At least thirty days prior to the final scheduled governing

body meeting in the medical staff year, the executive committee shall review all pertinent information available on each practitioner scheduled for periodic appraisal, including any clinical privilege requested for the following year, as submitted and recommended by the Credential Committee, for the purpose of determining its recommendation for reappointments to the medical staff and for the granting of clinical privileges for the ensuing period, and reappointment or a change in the clinical privileges is recommended, the reason for such recommendation shall be stated and documented, sent to the medical staff for a vote and returned to the executive committee for reevaluation. If unfavorable to the applicant, he may refer to Article VIII."

Article VIII, sections 1(a), (b), and (c) provide:

"a. When any practitioner receives notice of a recommendation of the executive committee that, if ratified by decision of the governing body, will adversely affect his appointment to or status as a member of the medical staff or his exercise of clinical privileges, he shall be entitled to a hearing before an *ad hoc* committee of the medical staff. If the recommendation of the executive committee following such hearing is still adverse to the affected practitioner, he shall then be entitled to an appellate review by the governing body before the governing body makes a final decision on the matter.

b. When any practitioner receives notice of a decision by the governing body that will affect his appointment to or status as a member of the medical staff or his exercise of clinical privileges, and such decision is not based on a prior adverse recommendation by the executive committee of the medical staff with respect to which he was entitled to a hearing and appellate review, he shall be entitled to a hearing by a committee appointed by the governing body, and if such hearing does not result in a favorable recommendation, to an appellate review by the governing body, before the governing body makes a final decision on the matter.

c. All hearings and appellate reviews shall be in accordance with the procedural safeguards set forth in this Article VIII to assure that the affected practitioner is accorded all rights to which he is entitled."

Simplified, the proper procedure requires the executive committee (of the medical staff) to make recommendations which are to be sent to the medical staff for a vote and then returned to the executive

committee for reevaluation. The applicant may, upon receiving notice of the unfavorable recommendation, request a hearing before an *ad hoc* committee. The *ad hoc* committee, according to article VIII, section 4, consists of three members of the medical staff, and if possible, not a member of the executive committee. The *ad hoc* committee report goes back to the executive committee, and if the executive committee continues with its original decision, the applicant is entitled to appellate review by the governing body before the governing body makes a final decision. The governing body is the board of directors of the hospital.

As stated in the majority opinion, on December 15, 1983, the Sarah Bush medical staff executive committee recommended Dr. Adkins' reappointment to the staff but recommended denying obstetrical and surgical privileges. The same day, the board of directors (the governing body) adopted the recommendations. There was no notice given to Dr. Adkins prior to the directors' action, thus defeating effective use of provisions for the *ad hoc* committee or appellate review.

Also, on December 15, 1983, another summary suspension "procedure" took place. Article VII, sections 2(a), (b), and (c) provide:

"a. A committee composed of three of the following; the chairman of the medical staff executive committee, the president of the medical staff, chief of the involved service, and the chief executive officer, shall whenever action must be taken immediately in the best interest of patient care in the hospital, summarily suspend all or any portion of the clinical privileges of a practitioner, and such summary suspension shall become effective immediately upon the imposition.

b. The practitioner whose clinical privileges have been summarily suspended shall be entitled to request that the executive committee of the medical staff hold a hearing on the matter within such reasonable time period thereafter as the executive committee may be convened in accordance with Article VIII of these bylaws.

c. The executive committee may recommend modification, continuance or termination of the terms of the summary suspension. If, as a result of such hearing, the executive committee does not recommend immediate termination of the summary suspension, the affected practitioner shall, also in accordance with Article VIII, be entitled to request an appellate review by the governing body, but the terms of the summary suspension as sustained or as modified by the executive committee shall remain in effect pending a final decision

thereon by the governing body."

The committee for this suspension consisted of the medical staff president, the chief of family practice, and the executive director, all three of whom were also on the executive committee that had recommended the limited reappointment.

Pursuant to the summary suspension provision (article VI, sec. 2(b)), Dr. Adkins requested a hearing before the executive committee of the medical staff. This hearing commenced on February 17, 1984, and consisted of the introduction of certain of Dr. Adkins' medical charts and testimony from Dr. Adkins. The doctor was not provided with a list of complaints or charges. The majority holds such was not necessary. Because of the mockery of due process evidenced in this case, I would require a detailed list of complaints and charges.

I agree that the summary suspension is "by definition, a temporary rather than permanent status," and justifiably can be based on less than is required by the annual reapplication procedures. I am not about to agree that Sarah Bush can do indirectly, by summary suspension, what it failed to do directly, correctly applying the reapplication procedure. If such is allowed, the procedure of reapplication may as well be abolished. The necessary implication of the bylaws is that summary suspension should be used "whenever action must be taken immediately," not as a gimmick to avoid the due process procedures provided by article VI, section 3 (reapplication to medical staff).

In reaching my conclusions, I am mindful of the supreme court decision in *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, 282 N.E.2d 728, and our court's decision in *Maimon v. Sisters of the Third Order of St. Francis* (1983), 120 Ill. App. 3d 1090, 458 N.E.2d 1317. This dissent is consistent with both of those decisions.

I would reverse and direct the trial court to craft a due process procedure which would adequately protect Dr. Adkins' rights in determining the propriety of his status at Sarah Bush, and at the same time, provide adequate protection to Sarah Bush. On all other issues, I would affirm the trial court for the reasons indicated in the majority opinion.