WILLIAM B. KNAPP *et al.*, Plaintiffs-Appellants and Appellees, v. PALOS COMMUNITY HOSPITAL *et al.*, Defendants-Appellees and Appellants.

First District (3rd Division) Nos. 84—3004, 85—0218, 85—0917 cons.

Opinion filed November 30, 1988.—Rehearing denied January 6, 1989.

Carponelli, Krug, Adamski & Goodstein and William J. Harte, Ltd., both of Chicago (William J. Harte, Gregory A. Adamski, and Stephen B. Carponelli, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, William J. Holloway, and Jennifer S. Craigmile, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

This litigation arises from the termination by defendant, Palos Community Hospital (Palos), of the medical staff privileges of the plaintiffs, William B. Knapp, M.D., Francisco Lopez, M.D., and Hugh Savage, M.D. This is the second appeal arising from this litigation. A different panel of this division of the Appellate Court, First District, previously held that the trial court had abused its discretion in granting plaintiffs a preliminary injunction prohibiting Palos from denying them reappointment to its medical staff because plaintiffs had not shown a likelihood of success on the merits. (*Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 465 N.E.2d 554.) By the time the mandate of this court was returned to the circuit court, after leave to appeal to the supreme court had been denied, this cause had proceeded to a jury trial on the second amended complaint. At the conclusion of the trial, the jury returned a verdict for Dr. Knapp against Palos and certain individual defendants and awarded him $400,000 in damages.

The facts underlying this litigation have been amply set forth and discussed in our prior opinion (hereinafter *Knapp I*) and will be repeated here only insofar as necessary. Plaintiffs are cardiologists engaged in a group practice. All three were employed by William B. Knapp and Associates, Inc. As members of Palos' medical staff, plaintiffs had the privilege of admitting patients, receiving treatment referrals from other physicians for patients already admitted, ordering tests and conducting surgery. All medical staff members are subject to an annual peer-review process, governed by the medical staff bylaws, to determine their fitness for staff reappointment. The annual redetermination of staff privileges and the increase or curtailment thereof at other times is based on the direct observation of care provided by the applicant through: (1) a review of the records of patients treated by him at Palos or other hospitals; (2) a review of the medical staff's evaluations of the applicant's participation in the delivery of medical care; and (3) other pertinent information concerning clinical performance obtained from reliable sources.

The bylaws provide the following procedures in the annual reapplication process. The first step in that process is a review of all pertinent information on an applicant for reappointment by the privilege evaluation committee of the department in which the applicant holds privileges and a recommendation by that body to the department chairman. Next, the members of the department either approve or disapprove the recommendation by majority vote and the chairman submits both recommendations to the medical executive committee. If

that committee's findings are favorable to the applicant, they are forwarded to Palos' board of directors; if its findings are adverse to him, the applicant is entitled to notice and a hearing before an *ad hoc* hearing panel which reports its decision and findings back to the medical executive committee. That committee forwards its findings to the board of directors. If the board's decision is adverse to the applicant, he is entitled to a hearing before an appellate review committee, which may refer the matter back to an appropriate body for further investigation and review or recommend affirmance, modification or reversal of the adverse decision to the board of directors for the ultimate disposition of the application.

Plaintiffs' original complaint alleged that their medical staff privileges to write orders for ventilation therapy had been wrongfully curtailed. The trial court granted plaintiffs a temporary restraining order prohibiting defendants from denying them reappointment to the medical staff. Plaintiffs then amended the complaint to allege that Palos had violated its bylaws in denying them reappointment. Thereafter, the trial court dissolved the temporary restraining order and entered a preliminary injunction reinstating plaintiffs to the medical staff. Defendants appealed the preliminary injunction and this court reversed the order of the trial court. This court held that, as Palos had not violated its bylaws in denying plaintiffs reappointment, its actions were not subject to judicial review and that, therefore, the trial court's order was an abuse of discretion since plaintiffs had not established a likelihood of success on the merits.

After defendants had appealed the preliminary injunction, plaintiffs filed a seven-count, second amended complaint on which this cause proceeded to trial. All seven counts are predicated on defendants' alleged violation of the medical staff bylaws in denying plaintiffs reappointment to Palos' medical staff. Counts I and II allege wilful, wanton and malicious breaches of contract; count III alleges wilful, wanton and malicious interference with plaintiffs' rights to practice medicine; count IV alleges wilful, wanton and malicious injury to plaintiffs by the individual defendants' inducement of Palos to withhold staff privileges; count V alleges the individual defendants' wilful, wanton and malicious interference with plaintiffs' business relationship with Palos; count IV alleges certain individual defendants' unfair competition with plaintiffs; count VII alleges the individual defendants' intentional, wilful, wanton and malicious infliction of severe emotional distress upon plaintiffs. Plaintiffs prayed for, *inter alia*, preliminary and permanent injunctive relief requiring defendants to grant plaintiffs full medical staff privileges and compensatory and pu-

nitive damages of at least $500,000. At the close of all the evidence, the trial court directed verdicts on all counts against plaintiffs Lopez and Savage and on all counts but I and II in favor of all but Palos and several individual defendants and against plaintiff Knapp. The jury returned a verdict for Knapp on counts I and II and awarded damages of $400,000.

This opinion consolidates three separate appeals taken by the parties from: (1) the verdicts directed by the trial court against plaintiffs Lopez and Savage and its denial to all plaintiffs of a permanent injunction requiring Palos to grant plaintiffs staff privileges (appeal No. 84—3004); (2) the judgment for plaintiff Knapp entered on the jury verdict in his favor (appeal No. 85—0917); and (3) the award under section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11—110) to defendants for damages resulting from the wrongful issuance of the preliminary injunction vacated in *Knapp I* (appeal No. 85—0218).

OPINION

■ Notwithstanding the voluminous and multifarious arguments of the parties, we believe that the one issue dispositive of appeals Nos. 84—3004 and 85—0917 is whether the trial court erred in entertaining the causes of action pleaded seeking equitable and legal relief against the defendant private hospital and the hospital's physicians, officers and directors. We believe that the trial court did err in entertaining plaintiffs' claims and requests for relief. In so doing, it violated the rule of limited judicial review of hospital medical staffing decisions established in *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108, and reaffirmed by relevant statutory law. We believe that the rule required the trial court to decline to exercise subject matter jurisdiction over plaintiffs' causes of action and requests for relief based thereon. On that basis, we (1) affirm the directed verdicts against plaintiffs Lopez and Savage and the denial to all plaintiffs of permanent injunctive relief, and (2) reverse the judgment and award of damages for plaintiff Knapp.

■ We recognize that "[o]ther than for jurisdictional reasons a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment." (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664.) However, we believe that our conclusion that the trial court should have declined to exercise its jurisdiction in this case is in the nature of a conclusion that it did not have jurisdiction here. We believe that, just as with our power to *sua sponte* conclude that the trial court had no

jurisdiction in this case, our authority as a court of review to conclude that the trial court improperly exercised its jurisdiction cannot be denied. This conclusion is buttressed by the fact that we need not even search the record to find an improper exercise of jurisdiction as we believe that fact appears on the face of plaintiffs' second amended complaint. Also, while the ultimate basis for our disposition of these appeals, an improper exercise of jurisdiction, was not argued or briefed by the parties or the *amici curiae*, the Illinois Hospital Association and the Chicago Hospital Council, the underlying bases of that conclusion were argued and briefed by them.

■■ ■ "Subject matter jurisdiction" has been variously defined as the power of a court to hear and decide a particular case or controversy (*Dahl v. Grenier* (1984), 126 Ill. App. 3d 891, 467 N.E.2d 992), the power to hear and determine a class of cases and the power to grant the particular relief requested (*People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 461 N.E.2d 505), and the power of a particular court to hear the type of case that is then before it (*Lescher v. Barker* (1978), 57 Ill. App. 3d 776, 373 N.E.2d 1007). The sources of subject matter jurisdiction of the circuit courts are article 6, section 9, of the Illinois Constitution of 1970 and legislative enactments. (*Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893.) Obviously, then, *Jain* could not abolish or limit the power of the trial court to hear and decide plaintiffs' causes of action or requests for relief.

■ However, we believe that *Jain* did, in effect, establish a rule requiring circuit courts to decline to exercise jurisdiction over the types of causes of action and requests for relief pleaded by plaintiffs based on Palos' decision regarding their membership on its medical staff. The decision of an appellate court of any district are binding precedent on all circuit courts where there are no contrary rulings, although they are not binding upon appellate courts of other districts. *People v. Collings* (1981), 95 Ill. App. 3d 325, 420 N.E.2d 203.

■ Our conclusion that the trial court should have declined to exercise such jurisdiction over plaintiffs' claims is based primarily, but not exclusively, on a long line of Illinois cases, beginning with *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108. Illinois cases have repeatedly recognized that decisions of private hospitals respecting the termination or curtailment of existing privileges of physicians on their medical staffs are subject only to a limited judicial review whose purpose is merely to determine whether such decisions were rendered in compliance with the bylaws of the in-

stitution. *Gates v. Holy Cross Hospital* (1988), 175 Ill. App. 3d 439; *Rodriguez-Erdman v. Ravenswood Hospital* (1987), 163 Ill. App. 3d 464, 516 N.E.2d 731; *Adkins v. Sarah Bush Lincoln Health Center* (1987), 158 Ill. App. 3d 982, 511 N.E.2d 1267; *Barrows v. Northwestern Memorial Hospital* (1987), 153 Ill. App. 3d 83, 505 N.E.2d 1182, *rev'd on other grounds* (1988), 123 Ill. 2d 49, 525 N.E.2d 50; *Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 494 N.E.2d 838; *Rao v. St. Elizabeth's Hospital* (1986), 140 Ill. App. 3d 442, 488 N.E.2d 685; *Knapp v. Palos Community Hospital* (1984), 125 Ill. App. 3d 244, 465 N.E.2d 554; *Maimon v. Sisters of The Third Order of St. Francis* (1983), 120 Ill. App. 3d 1090, 458 N.E.2d 1317; *Spencer v. Community Hospital of Evanston* (1980), 87 Ill. App. 3d 214, 408 N.E.2d 981; *Settler v. Hopedale Medical Foundation* (1980), 80 Ill. App. 3d 1074, 400 N.E.2d 577.

We recognize that, since *Jain*, courts of review have also passed upon, for instance, the issue whether physicians have adequately stated causes of action against private hospitals similar to those which plaintiffs pleaded against Palos. (See, *e.g.*, *Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 408 N.E.2d 981 (cause of action for libel); *Adkins v. Sarah Bush Lincoln Health Center* (1987), 158 Ill. App. 3d 982, 511 N.E.2d 1267 (causes of action for wilful and malicious bylaw violations and for violation of Illinois Antitrust Act).) We also recognize that to the extent that they have done so they have implicitly recognized the right of a physician to bring such actions against a private hospital. However, we are convinced that the right of limited judicial review to determine compliance or noncompliance with bylaws means just that, *limited* judicial review.

The *Jain* court cited, *inter alia, Shulman v. Washington Hospital Center* (D.D.C. 1963), 222 F. Supp. 59, in articulating the rule of limited judicial review applicable in cases of this type. As the *amici curiae* point out, *Shulman* is one of the seminal cases in this area. It is therefore the best guide as to the meaning of the "limited" judicial review to which cases such as this are subject as that term was used in *Jain* and has been used since.

In *Shulman*, the plaintiff physician was not reappointed to the courtesy staff of the defendant private hospital. Seeking reinstatement to the staff, the plaintiff sued for an injunction, a declaratory judgment and damages for malicious defamation. (*Shulman*, 222 F. Supp. at 60.) In deciding whether a private hospital could appoint and remove members of its medical staff at will and could, at its discretion, exclude physicians from practicing in it, the court stated:

"The overwhelming weight of authority, almost approaching

unanimity, is to the effect that such power and authority exist. The rule is well established that a private hospital has a right to exclude any physician from practicing therein. The action of hospital authorities in refusing to appoint a physician or surgeon to its medical staff, *or declining to renew an appointment that has expired,* or excluding any physician or surgeon from practising [*sic*] in the hospital, is not subject to judicial review. The decision of the hospital authorities in such matters is final.

The only possible exception is in a case in which there is a failure to conform to procedural requirements set forth in its constitution, by-laws, or rules and regulations. *In that event, the extent of judicial review is to require compliance with the prescribed procedure. Beyond that, the courts do not interfere."* (Emphasis added.) *Shulman,* 222 F. Supp. at 63.

After reviewing the weight of authority supporting the rule, the court stated the rationale behind it:

"There are sound reasons that lead the courts not to interfere in these matters. Judicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs, declining to renew appointments previously made, or excluding physicians or surgeons from hospital facilities. The authorities of a hospital necessarily and naturally endeavor to their utmost to serve in the best possible manner the sick and the afflicted who knock at their door. Not all professional men, be they physicians, lawyers, or members of other professions, are of identical ability, competence, or experience, or of equal reliability, character, and standards of ethics. The mere fact that a person is admitted or licensed to practice his profession does not justify any interference beyond the conclusion that he has met the minimum requirements and possesses the minimum qualifications for that purpose. Necessarily hospitals endeavor to secure the most competent and experienced staff for their patients. *** [T]he hospital in admitting a physician or surgeon to its facilities extends a moral imprimatur to him in the eyes of the public. Moreover not all professional men have a personality that enables them to work in harmony with others, and to inspire confidence in their fellows and in patients. These factors are of importance and here, too, there is room for selection. In matters such as these the courts are not in a position to substitute their judgment for that of professional groups.
***

The court is not unmindful *** that due to the shortcomings of human nature, an occasional injustice may result, because of clashes of personality or temperament, possible likes and dislikes, jealousy or differences of opinion. The courts, however, do not sit to remedy every ill caused by the frailties of mankind. Their function is but to vindicate legal rights and redress legal wrongs.

In view of the conclusion reached that the Court may not interpose to review the decision of the hospital in failing to renew the plaintiff's appointment ***, no action lies against the corporation or its officers for a declaratory judgment or an injunction." (*Shulman*, 222 F. Supp. at 64-65.)

The court lastly found that the plaintiff failed to state a valid defamation claim against the individual defendants, officers of the hospital.

■ Thus, under the *Shulman* rule, which Illinois appellate courts have purported to follow since *Jain*, a physician claiming that a private hospital violated bylaws governing the procedure it was required to follow in rendering a decision regarding his staff privileges is merely entitled to relief requiring the hospital to comply with those bylaws before it renders its decision. In other words, the rule does not allow a trial court to entertain the types of claims prosecuted by plaintiffs against a private hospital for violating its bylaws, nor to grant equitable relief requiring the hospital to reinstate the plaintiff-physicians to its medical staff or legal relief against the hospital for violating its bylaws in terminating the physicians from its medical staff.

■ Moreover, we believe that *Jain* also barred plaintiffs from maintaining the causes of action pleaded against Palos against the individual defendants who participated in the decisions to terminate plaintiffs' staff privileges, *viz.*, physicians on the medical staff of Palos or employed by it to review plaintiffs' performance and the president as well as directors of Palos. To deny protection to the individual defendants would effectively deny protection to Palos since it can only act through individuals. *Settler v. Hopedale Medical Foundation* (1980), 80 Ill. App. 3d 1074, 1078, 400 N.E.2d 577.

In addition to *Jain*, we also base our conclusion that the trial court should have declined to exercise its jurisdiction in this case on Illinois statutory law, which we believe reaffirms the limited review rule of *Jain*.

■ ■ At the time of the peer review of plaintiffs in which the individual defendants participated, section 1 of "An Act providing for the confidential character of medical studies conducted by the Illinois

Department of Public Health, Illinois State Medical Society, allied medical societies and committees of accredited hospitals, and providing a penalty for the violation thereof" (the Medical Studies Act) provided:

> "All information, interviews, reports, statements, memoranda or other data of *** committees of accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees *** used in the course of internal quality control *** for improving patient care, shall be privileged, strictly confidential and shall be used only for *** the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of date upon which such a decision was based." (Ill. Rev. Stat. 1981, ch. 51, par. 101.)

The purpose of this statute, now section 8—2101 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101), "is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care." It "is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480, 468 N.E.2d 1162.) Section 2 of the former Medical Studies Act, now section 8—2102 of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 8—2102), provided:

> "Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court before any tribunal, board, agency or person." (Ill. Rev. Stat. 1981, ch. 51, par. 102.)

We believe that sections 8—2101 and 8—2102 bestow upon those involved in a hospital's decisions to grant, revoke or limit staff privileges an absolute privilege insofar as concerns their statements before the bodies involved in the peer-review process. As such, they prohibit the use of those statements in the type of causes of action prosecuted by plaintiffs against the individual defendants here.

■ As noted, section 8—2101 limits the access to or use of the data on which a decision regarding a physician's staff privileges was based to "any hospital proceeding to decide upon [such] privileges or

\*\*\* any judicial review thereof." (Ill. Rev. Stat. 1983, ch. 110, par. 8—2102.) In so doing, we believe section 8—2101 allows a judicial review limited to whether the hospital complied with its bylaws in taking such action. The quoted language was added by Public Act 81—476, effective September 7, 1979 (1979 Ill. Laws 2040), after the decision of *Matviuw v. Johnson* (1979), 70 Ill. App. 3d 481, 388 N.E.2d 795. *Matviuw* held that section 1 of the Medical Studies Act construed therein, which did not then limit the permitted access to or use of the pertinent data, allowed a physician to use statements made to a peer review committee as a basis for a defamation suit. The court also held that section 2 of the statute did not bar the action since it fell within the unqualified exception to the general rule of confidentiality then provided in section 1. Significantly, in a subsequent appeal in the same case, the appellate court noted that this amendment and a second, making the data on which staff privileges decisions were privileged and undiscoverable, would have rendered privileged the statements at issue if applicable to the case. *Matviuw v. Johnson* (1982), 111 Ill. App. 3d 629, 631-32, 444 N.E.2d 606. See also *Green v. Silver Cross Hospital* (N.D. Ill. 1984), 606 F. Supp. 87 (under the Medical Studies Act peer-review hearing testimony was privileged and could not be basis of claims for defamation or tortious interference with business expectation).

 It is presumed that the legislature, in adopting an amendment, was aware of judicial decisions concerning prior and existing law. (*Kazak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 218, 447 N.E.2d 394.) It is therefore reasonable to conclude that this amendment to now section 8—2101 was a response to the first *Matviuw* decision. It is also reasonable to conclude that it was intended to make clear that the data on which staff privileges decisions were based, including statements of the peer-review participants, were to be used only in the peer-review process itself or a judicial review of that process limited in its scope to that established in *Jain*. This conclusion is buttressed by the observation that the amendment represents "an attempt by the legislature to safeguard the physician's right to due process" (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 482, 468 N.E.2d 1162), which concern is, we believe, at the heart of the limited review rule of *Shulman* and *Jain*.

 Section 10.2 of the Hospital Licensing Act (Ill. Rev. Stat. 1985, ch. 111½, par. 142 *et seq.*) even more explicitly compels the conclusion that the claims prosecuted by plaintiffs against the individual defendants, as well as Palos, are not permitted under Illinois law. Section 10.2 provides:

"No hospital and no individual who is a member, agent or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control \*\*\*, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline." (Ill. Rev. Stat. 1985, ch. 111½, par. 151.2.)

The legislative purpose of section 10.2, which immunizes hospitals and individuals from civil liability for their actions in the peer-review process, is, "like that of section 8—2101, to foster effective self-policing by members of the medical profession in matters unique to that profession and to thereby promote the legitimate State interest in improving the quality of health care in Illinois." (*Rodriguez-Erdman v. Ravenswood Hospital* (1987), 163 Ill. App. 3d 464, 470, 516 N.E.2d 731.) The fact that section 10.2 became effective after the occurrence of the events at issue here does not make it inapplicable to this cause. *Rodriguez-Erdman*, 163 Ill. App. 3d at 471-72.

██ Moreover, we do not believe that section 2b of the Medical Practice Act (Ill. Rev. Stat. 1981, ch. 111, par. 4402 *et seq.*) vitiates the conclusion that Illinois law does not contemplate the type of claims prosecuted by plaintiffs here. Section 2b provides:

"While serving upon any Medical Utilization Committee, Medical Review Committee, Patient Care Audit Committee, Medical Care Evaluation Committee, Quality Review Committee, Credential Committee, Peer Review Committee, or any other committee whose purpose, directly or indirectly, is internal quality control \*\*\*, or for improving patient care within a hospital duly licensed under the Hospital Licensing Act, or the improving or benefiting of patient care and treatment whether within a hospital or not, or for the purpose of professional discipline, any person serving on such committee, and any person providing service to such committees shall not be liable for civil damages as a result of his acts, omissions, decisions, or any other conduct in connection with his duties on such committees, except those involving wilful or wanton misconduct." (Ill. Rev. Stat. 1985, ch. 111, par. 4406.)

Parenthetically, we note that *Settler* held that an allegation of wilful and wanton misconduct against individual physicians, although not barred by section 2b, was nonetheless defeated by the rule of *Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 232 N.E.2d 776. *Mauer* established that a private hospital's refusal to appoint a physician in the first instance to its medical staff was not subject to *any* judicial review. (*Mauer*, 90 Ill. App. 2d at 412-13.) We do conclude, in contrast to *Settler*, that section 2b is irreconcilably inconsistent with sections 8—2101 and 8—2102 of the Code of Civil Procedure to the extent that it allows a claim of wilful and wanton misconduct to be based on oral or written statements made by physicians and others participating in the peer-review process. That is, we do not see how a claim of wilful and wanton misconduct can be based on such statements under the Medical Practice Act while sections 8—2101 and 8—2102 simultaneously make them privileged, confidential, undiscoverable and inadmissible as evidence "in *any* action of *any* kind in *any* court." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 8—2102.

■■■ Where two statutes conflict, the specific statute controls over the general statute. (*Sierra Club v. Kenney* (1981), 88 Ill. 2d 110, 429 N.E.2d 1214.) Section 8—2101 renders statements made in the peer-review process confidential and privileged. It further provides an exception allowing access to and use of such statements in the peer-review process itself and a judicial review of that process. Further, section 8—2102 explicitly bars the discovery of such statements and makes them inadmissible "in any action of any kind in any court." (Ill. Rev. Stat. 1983, ch. 111, par. 8—2102.) Section 2b, on the other hand, provides an immunity from civil liability for peer-review participants and an exception to that immunity for wilful and wanton misconduct. We believe that, in their respective language, sections 8—2101 and 8—2102 are more specific than section 2b and thus are controlling over it.

The plain and unambiguous language of sections 8—2101 and 8—2102 admit of no exception to the bar contained therein and we do not believe we may read into it any exception for wilful and wanton misconduct. Our conclusion is reinforced by the similarly absolute and unconditional language of section 10.2 of the Hospital Licensing Act.

■■■ We believe that our conclusion that the trial court improperly exercised jurisdiction over this cause is dispositive of appeal No. 85—0218 as well. We therefore hold that the trial court did not abuse its discretion in awarding damages to defendants for the wrongful issuance of the preliminary injunction entered in this case. However, in-

dependent of that determination, we also hold that this court's reversal in *Knapp I* of the order granting the preliminary injunction constituted a finding that the injunction had wrongfully issued. This is established beyond peradventure in *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 483 N.E.2d 1271. *Barton* involved a reversal by the appellate court of an order granting a preliminary injunction on the ground that the trial court had abused its discretion because the plaintiff had failed to show a clearly ascertained right in need of protection. After receipt by the trial court of the appellate court's mandate, the defendants filed a petition for damages due to the wrongful issuance of the injunction, under section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 11—110), based on the appellate court's holding. The defendants then appealed the trial court's order holding section 11—110 unconstitutional directly to the supreme court. In reversing that order, the court observed that damages under section 11—110 are imposed only where there is an adjudication that the preliminary injunction was wrongfully issued and held that the plaintiff had litigated that issue in the appellate court. As such, the court found plaintiff's claim that it did not have an opportunity to litigate that issue without merit. *Barton*, 108 Ill. 2d at 385.

Similarly here, plaintiffs' argument that there has been no finding that the preliminary injunction entered by the trial court was wrongfully issued is clearly untenable. This court found that the trial court had abused its discretion in entering the injunction because plaintiffs had failed to establish a likelihood of success on the merits. As the supreme court held in *Barton*, plaintiffs litigated the issue of the wrongful issuance of the injunction in the course of defendants' appeal from the trial court order and our holding constituted an adjudication that the injunction had wrongfully issued. Moreover, after this court's mandate was returned to the trial court upon the supreme court's denial of leave to appeal, the trial court also entered an order dissolving the preliminary injunction pursuant to defendants' motion, contrary to plaintiffs' assertion that the court merely held that our mandate "was self-executing." Thus, whether based on our reversal of the order granting the preliminary injunction or its own order dissolving the injunction pursuant to our mandate, the trial court did not abuse its discretion in awarding defendants damages due to the wrongful issuance of the preliminary injunction under section 11—110 of the Code of Civil Procedure.

██ Moreover, the trial court's award of $50,510.60 plus interest was not against the manifest weight of the evidence. The testimony

at the evidentiary hearing held on defendants' petition to assess damages, which plaintiffs incorrectly assert they were denied, amply supports the award and plaintiffs present no compelling arguments to hold otherwise. The award of damages entered by the trial court is affirmed.

For all of the foregoing reasons, the directed verdicts against plaintiffs Savage and Lopez on all counts, against plaintiff Knapp on all counts but I and II, and the denial to all plaintiffs of permanent injunctive relief are affirmed, the judgment entered on the jury verdict and the award to Dr. Knapp are reversed, and the award to defendants of damages under section 11—110 of the Code of Civil Procedure is affirmed.

Affirmed in part; reversed in part.

WHITE, P.J., and RIZZI, J., concur.