WILLIAM BARROWS, Appellee, v. NORTHWESTERN MEMORIAL HOSPITAL *et al.*, Appellants.

*Opinion filed May 26, 1988.*

Michael J. Koenigsknecht and Thaddeus J. Nodzenski, of Chicago (Gardner, Carton & Douglas, and Mitchell J. Wiet and Steven H. Jesser, of counsel), for appellants.

Wayne B. Giampietro and James B. Dykehouse, of Chicago (Poltrock & Giampietro, of counsel), for appellee.

Mark Damian Deaton and Daniel J. Mulvanny, of Naperville, and Rudolf G. Schade, Jr., and Michael J. Gallagher, of Cassiday, Schade & Gloor, of Chicago (Robert J. Pristave, Robert J. Burdett, Jr., and Shawn M. Lyden, of Ross & Hardies, of Chicago, of counsel),

for *amici curiae* Illinois Hospital Association *et al.*

JUSTICE RYAN delivered the opinion of the court:

Dr. William Barrows, the plaintiff, brought this action in the circuit court of Cook County, challenging the decision of defendant Northwestern Memorial Hospital (Northwestern) denying him membership on its medical staff. The trial court dismissed all four counts of the complaint on the basis that the staff decisions of private hospitals are not subject to judicial review. The appellate court reversed and remanded, holding that courts may review such decisions as a matter of public policy, to ensure that exclusions are not "unreasonable, arbitrary, capricious or discriminatory." (153 Ill. App. 3d 83, 90.) We granted Northwestern's petition for leave to appeal. 107 Ill. 2d R. 315.

Plaintiff's complaint alleged that he and another pediatrician had a working relationship with a group of obstetrical-gynecological (ob-gyn) physicians. Under their arrangement, the pediatricians would take over the care of babies born to the patients of the ob-gyn physicians. In January 1984, the defendant granted the ob-gyn physicians admission to the staff of Prentice Hospital, a facility operated by the defendant. These physicians transferred their staff affiliation to Northwestern. Plaintiff subsequently applied for admission to the staff at Northwestern. He was informed that Northwestern's pediatrics department did not need another pediatrician of plaintiff's particular qualifications, and that his application for staff admission was denied.

Plaintiff objected to the decision, arguing that defendant's bylaws permitted him to appear and be heard on the application. Defendant granted plaintiff a meeting, after which it again denied his application.

Plaintiff filed a four-count complaint, naming as defendants Northwestern, Dr. John J. Boehm, chairman

of Northwestern's pediatrics service, Dr. James R. Hines, chief of staff at the hospital, and Dr. James A. Stockman III, chairman of the department of pediatrics. Count I alleged that the actions of the defendants amounted to a conspiracy to interfere with his business relationship with the ob-gyn physicians. Count II alleged that defendants' conduct unreasonably restrained trade in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3). Count III asserted that certain unwritten rules governing staff admission constituted fraud. Count IV alleged that denial of hospital staff privileges should be reviewable as a matter of public policy.

In dismissing plaintiff's complaint the trial court relied upon two appellate court decisions, *Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, and *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420. *Mauer*, which is commonly cited as the leading Illinois case on the subject, presented virtually identical facts to those in the instant case. The plaintiff was denied staff membership at Highland Park Hospital. He initiated an action seeking to challenge the denial, but the trial court dismissed his complaint. In affirming the decision of the trial court, the appellate court stated:

> "It is a well-settled rule that a private hospital has the right to refuse to appoint a physician or surgeon to its medical staff, and this refusal is not subject to judicial review; the decision of the hospital authorities in such matters is final. [Citations.]" (*Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 412-13.)

The *Mauer* court further stated:

> "Plaintiff asks this Court to 'modify' or 'repudiate' the general doctrine reiterated and adhered to by the foregoing decisions, notwithstanding that this doctrine is supported by 'the overwhelming weight of authority, almost approaching unanimity.' [Citation.] However, the

only reason the plaintiff gives in his request that we dishonor established law, namely, that the enjoyment of public funds and the tax-free status of the hospital impresses it with a public interest requiring judicial review of internal decisions, has *itself* been dishonored and repudiated by the decided cases. We elect to follow the teaching of these cases, and we refuse to substitute our judgment for that of the hospital authorities regarding the acceptance of plaintiff for staff membership in a private hospital. Indeed, this doctrine is all the more fitting by virtue of the current Illinois law imposing potential liability on a hospital for the imprudent or careless selection of its staff members, without limitation to the amount of its liability insurance. *Darling v. Charleston Community Memorial Hospital,* 33 Ill2d 326 337-338, 211 NE2d 253 (1965)." (Emphasis in original.) *Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 414-15.

While this court has not had occasion to review the issue, the *Mauer* "rule of non-review" has been generally applied by the appellate court of this State. (See, *e.g., Settler v. Hopedale Medical Foundation* (1980), 80 Ill. App. 3d 1074; *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420.) Also, as the *Mauer* court noted, the rule of nonreview has historically been adopted by the vast majority of other jurisdictions. See Annot., 37 A.L.R.3d 645 (1971).

Plaintiff asserts, however, that the rule of nonreview has fallen into disfavor, and that the "modern view," which permits limited review of hospital staff decisions, has gained increasing acceptance over the years since the *Mauer* decision. The plaintiff urges this court to join this trend by affirming the decision of the appellate court.

We reject these contentions and reverse. We do so for several reasons. First, the "trend" which the plaintiff identifies is not as widespread or as compelling as plaintiff would assert. The large majority of States continue

to adhere to the rule of nonreview. Second, the special considerations which have caused some other States to abandon the rule of nonreview are not applicable to this case. Finally, the public policy of this State, as set forth in a number of statutory enactments, militates against recognition of the plaintiff's claim.

The leading case for abandonment of the rule of non-review, and a case relied on by the appellate court, is *Greisman v. Newcomb Hospital* (1963), 40 N.J. 389, 192 A.2d 817. In that case the plaintiff, an osteopath, had been denied the opportunity to apply for staff membership at defendant hospital on the basis of a bylaw which required that staff members be graduates of medical schools approved by the American Medical Association. He brought suit against the hospital, urging that courts should review hospital staff decisions to ensure that exclusions are made "in good faith and on reasonable grounds *** related 'to the advancement of medical science or the elevation of professional standards.' " *Greisman*, 40 N.J. at 395, 192 A.2d at 820.

The supreme court of New Jersey began its analysis by acknowledging the then predominant view that private hospitals may exclude physicians from their staffs without judicial interference. However, the court went on to observe that while hospitals are private in the sense that they are nongovernmental:

"[T]hey are hardly private in other senses. [The hospital] is a nonprofit organization dedicated by its certificate of incorporation to the vital public use of serving the sick and injured, its funds are in good measure received from public sources and through public solicitation, and its tax benefits are received because of its nonprofit and nonprivate aspects." *Greisman*, 40 N.J. at 396, 192 A.2d at 821.

The *Greisman* court identified other factors as well. It noted that Newcomb was the only hospital in the area

in which the plaintiff practiced. Thus, were the plaintiff excluded from the staff at Newcomb, his patients would often be deprived of care by their doctor of choice. Also, exclusion from the staff of the only hospital in the area would obviously have a negative economic impact on the plaintiff's practice.

The court concluded by saying:

"All this indicates very pointedly that, while the managing officials may have discretionary powers in the selection of the medical staff, those powers are deeply imbedded in public aspects, and are rightly viewed *** as fiduciary powers to be exercised reasonably and for the public good." *Greisman,* 40 N.J. at 402, 192 A.2d at 824.

New Jersey subsequently extended the holding in *Greisman* in *Sussman v. Overlook Hospital Association* (1966), 92 N.J. Super. 163, 222 A.2d 530, *aff'd* (1967), 95 N.J. Super. 418, 231 A.2d 389. As noted above, the *Greisman* decision was at least partially based on the fact that the defendant hospital was the only hospital in the area. This monopolistic situation weighed in favor of review of staff decisions because of the obvious adverse economic consequences to doctors excluded. This factor was not present in *Sussman,* but the court applied *Greisman* nevertheless. The court stated:

"It is true that in this case there is no element of monopoly power and economic deprivation of a right to earn a living, as was present in *Falcone v. Middlesex County Medical Society,* 34 N.J. 582, 170 A.2d 791, 89 A.L.R.2d 952 (1961), and to a more limited extent in *Greisman.* Dr. Sussman admitted that he has a large income and will continue to have one although denied appointment to Overlook's medical staff. Also, his membership on the staffs of Muhlenberg and Perth Amboy General shows that his livelihood is not affected. The same is true of Dr. Scialabba. However, it is not necessary to find monopoly or deprivation of all economic opportunity before there is a case for judicial review. *Greisman* indicates that since

the function of the private organization in question is public, judicial review is available to hold said organization to conduct becoming a fiduciary." *Sussman*, 92 N.J. Super. at 176, 222 A.2d at 537.

Thus, by eliminating economic necessity as a basis for review of hospital staff decisions, New Jersey has come to adopt what might be termed a "pure" public policy position. Decisions of private hospitals are subject to judicial review merely on the basis of hospitals' "quasi-public," "fiduciary" status. It is this "pure" approach which the appellate court embraced in our case, and which the plaintiff urges this court to adopt.

It should be noted that *Greisman* was decided before the decision of our appellate court in *Mauer*, and was referred to in that opinion. Also, in *Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, the holdings in *Greisman* and *Sussman* were urged upon our appellate court and, as in our case, plaintiff argued that the holdings in *Greisman* and *Sussman* have been adopted by several other jurisdictions. However, our appellate court, in *Jain*, refused to follow the holdings of *Greisman* and *Sussman*.

As noted earlier, the plaintiff argues that the New Jersey rule has gained increasing acceptance among the States, and therefore represents the modern, "enlightened" view. A survey of other States, however, casts doubt upon this assertion.

A recent law review note summarized the position of the States on this issue. (Note, *Michigan Court Joins Majority in Denying Judicial Review of Staffing Decisions of Private Hospitals*, 6 Am. J. Trial Advoc. 339 (1982).) This survey, bolstered by independent research, suggests that the New Jersey rule has been adopted by courts in Arizona (*Holmes v. Hoemako Hospital* (1977), 117 Ariz. 403, 573 P.2d 477), California (*Miller v. National Medical Hospital of Monterey Park, Inc.* (1981),

124 Cal. App. 3d 81, 177 Cal. Rptr. 119), Hawaii (*Silver v. Castle Memorial Hospital* (1972), 53 Haw. 475, 497 P.2d 564), New Hampshire (*Bricker v. Sceva Speare Memorial Hospital* (1971), 111 N.H. 276, 281 A.2d 589), Vermont (*Woodard v. Porter Hospital, Inc.* (1966), 125 Vt. 419, 217 A.2d 37) and New Mexico (*Kelly v. St. Vincent Hospital* (1984), 102 N.M. 201, 692 P.2d 1350).

Thus, in the approximately 25 years since *Greisman*, State courts in only a limited number of jurisdictions have chosen to embrace the New Jersey rule. We do not consider that fact as evidence of a compelling trend.

Moreover, closer examination reveals that some of the States listed above have stopped short of New Jersey's "pure" approach. For example, when the court of appeals of New Mexico announced its adoption of a rule permitting judicial review, it declared the following rationale for its decision:

> "New Mexico is in a unique situation where, in many instances, only one hospital serves an isolated area. Because hospital care is often a necessity, and because there is no economic mechanism which encourages hospitals to make consumer-sensitive policy choices, some public oversight must be exercised over private hospitals. Accordingly, we hold, based on the reasoning in *Holmes*, that we review, under very limited circumstances, decisions made by a private hospital board." *Kelly*, 102 N.M. at 204, 692 P.2d at 1353.

Thus, New Mexico's adoption of the rule does not rest on the pure public policy reasons urged here, but rather on economic concerns created by that State's rural, sparsely populated nature. The *Holmes* case referred to above is from Arizona, which based its adoption of the rule of review on similar special circumstances. (*Holmes v. Hoemako Hospital* (1977), 117 Ariz. 403, 573 P.2d 477.) New Hampshire, another sparsely populated State, also based its rule on the same theoretical foundation.

*Bricker v. Sceva Speare Memorial Hospital* (1971), 111 N.H. 276, 281 A.2d 589.

Clearly, the States which utilize the "pure" public policy material rationale of New Jersey represent a tiny minority of the States of this nation. The relevant inquiry is whether Illinois, as a matter of public policy, should make staff membership decisions of private hospitals generally subject to judicial review.

It is a long-standing principle that the public policy of the State is to be found embodied in its constitution and statutes. (*Routt v. Barrett* (1947), 396 Ill. 322, 71 N.E.2d 660.) We therefore look to those sources to determine whether Illinois' policy supports recognition of the plaintiff's cause of action.

We need not search long for statements regarding such policy. For instance, in 1977, the General Assembly amended the Medical Practice Act to include the following provision:

> "While serving upon any Medical Utilization Committee, Medical Review Committee, Patient Care Audit Committee, Medical Care Evaluation Committee, Quality Review Committee, Credential Committee, Peer Review Committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital duly licensed under the Hospital Licensing Act, or the improving or benefiting of patient care and treatment whether within a hospital or not, or for the purpose of professional discipline, any person serving on such committee, and any person providing service to such committees shall not be liable for civil damages as a result of his acts, omissions, decisions, or any other conduct in connection with his duties on such committees, except those involving willful or wanton misconduct." (Ill. Rev. Stat. 1985, ch. 111, par. 4406.)

Subsequently, in 1985, the Hospital Licensing Act was amended to provide as follows:

"No hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient." Ill. Rev. Stat. 1985, ch. 111½, par. 151.2.

These provisions operate to grant immunity to physicians, hospitals and their staffs from civil liability for service upon peer review or other credential committees. While not dispositive of the issue before us, these statutes do indicate a general legislative intention that hospitals and medical staffs be free to exercise their professional judgment in the selection and retention of medical staff members.

An even clearer indication of intent is contained in the Illinois Health Finance Reform Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6501–1 *et seq.*). Section 3–4 of that act deals with the requirements for hospitals which deliver patient services under the Act, and the duties of the Department of Public Aid in negotiating contracts with such hospitals. After a lengthy enumeration of factors to be considered in awarding such contracts, the Act includes the following disclaimer:

"It is not the intent of the General Assembly, nor shall it be the policy of the State of Illinois, to take from medical staffs and hospitals the determination as to the qualifica-

tions of practitioners for purposes of granting medical staff membership and privileges." Ill. Rev. Stat. 1985, ch. 111½, par. 6503—4.

Thus, the General Assembly has made an express declaration of policy which, in our view, requires that we reject the public policy claim accepted by the appellate court. It is worthy of note that the above provisions of the Medical Practice Act, the Hospital Licensing Act and the Illinois Health Finance Reform Act were all enacted or amended since our appellate court's decisions in *Mauer* and *Jain*, which specifically declined to follow the minority view that decisions of private hospitals refusing appointments to their medical staffs are subject to judicial review. The legislature in these acts did not contradict but instead reaffirmed the policy supporting the holdings of the court in *Mauer* and *Jain*. We therefore reverse the holding of the appellate court in the case before us on the public policy issue, which is contrary to the public policy as stated in *Mauer* and *Jain*, and reaffirmed by the General Assembly in the acts referred to herein.

As noted earlier in this opinion, plaintiff's complaint charged conspiracy by the defendants to interfere with plaintiff's business relations with the ob-gyn physicians, that defendants' conduct unreasonably restrained trade in violation of the Illinois Antitrust Act, and that certain unwritten rules governing staff admission constituted fraud. These issues were not addressed by the appellate court, which decided the case solely on the public policy count of the complaint. We consider the briefs and arguments before us insufficient for this court to determine whether the public policy against judicial review and the relevant statutory enactments preclude recovery by the plaintiff under the other theories alleged, or whether the allegations of the complaint are sufficient to support recovery under these other counts. We therefore remand

this case to the appellate court for the first district for further proceedings.

*Appellate court reversed;*
*cause remanded.*