MICHAEL S. CARDWELL, Plaintiff-Appellant, v. ROCKFORD MEMO-RIAL HOSPITAL ASSOCIATION *et al.*, Defendants-Appellees.

Second District No. 2—88—0870

Opinion filed June 7, 1989.

NASH, J., dissenting.

William T. Cacciatore, of Bruscato & Cacciatore, of Rockford, for appellant.

Richard R. Haldeman and Stephen E. Balogh, both of Williams & McCarthy, P.C., of Rockford, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Dr. Michael S. Cardwell, appeals from an order of the circuit court of Winnebago County dismissing his complaint against defendants, Rockford Memorial Hospital Association (Hospital), and Terry A. White, individually and as assistant administrator of the Hospital. The trial court granted defendants' motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)) on the basis that statutes and Hospital bylaws provided defendants with immunity for the conduct alleged in plaintiff's complaint. The sole issue on appeal is whether the trial court erred in granting defendants' motion to dismiss. We affirm.

In 1985, plaintiff was a perinatalogist (specialist in the care and treatment of high risk fetuses) employed by the Hospital under written contract as medical director of the department of perinatalogy. In May or June of that year, Gary Longanecker, administrator of the employee assistance program for the Hospital, began to suspect that plaintiff had a drinking problem. Longanecker's suspicion was fostered after smelling alcohol on plaintiff's breath during working hours on several different occasions. In August 1985, plaintiff's secretary, Alyce Lashock, approached Longanecker and advised him that she detected alcohol on plaintiff's breath while he was performing certain medical procedures. Lashock further stated that plaintiff was exhibiting "bizarre behavioral mood swings" and lapses of memory. Longanecker conveyed this information to Dr. William Rouse, chairman of the Hospital credentials committee, and defendant Terry White, assistant administrator of the Hospital and plaintiff's immediate supervisor.

White subsequently approached Lashock to discuss plaintiff's behavior. Lashock told White that she had witnessed abrupt changes in plaintiff's behavior during a three- to four-month period prior to August 1985. According to Lashock, plaintiff became volatile, secretive, hyperactive, and frantic. Lashock further related that plaintiff would disappear for periods of time and return "wired." Lashock advised White that plaintiff was also exhibiting poor judgment in the handling of his patients.

Following his interview with Lashock, White contacted Dr. Richard Banta, a chemical dependency specialist, and requested his assistance as a consultant in plaintiff's case. Banta subsequently con-

ducted interviews with members of the Hospital staff who had contact with plaintiff. Among those interviewed were White, Lashock, and several nurses who worked closely with plaintiff. According to these witnesses, plaintiff was subject to mood swings, frequently reversed his position in business discussions, had a selective memory, did not accept responsibility for his own actions, became abrupt and tactless with patients, and became self-centered. Banta was also told that plaintiff was obsessed with talk of drinking and often boasted about becoming intoxicated. In addition, plaintiff would occasionally leave work and return "wired." Plaintiff was described as bizarre, paranoid, and mood-elevated. The witnesses also noted that plaintiff's appetite became sporadic and that he had developed an unusual rapport with drug company representatives. In conducting the interviews, Banta noted that while the witnesses believed that something was wrong with plaintiff, they were reluctant to speak because of a fondness and respect for him. Banta advised White that, in Banta's opinion, plaintiff had a substance abuse problem that required rapid intervention.

Acting on Banta's advice, Dr. John McHugh, vice-president of medical affairs for the Hospital, formed a committee consisting of himself, White, Rouse, and Dr. Richard Novak, first vice-president of the medical staff. On August 29, 1985, this committee met for the purpose of confronting plaintiff on his behavior and suggesting the possibility that he had an alcohol, drug, or emotional problem which required intervention. The committee requested plaintiff to submit to an evaluation by Dr. Donald Sellers, a physician experienced in treating impaired physicians. Plaintiff initially refused but relented when he was advised that his refusal to undergo the evaluation would result in the immediate revocation of his staff privileges at the Hospital. The evaluation was conducted later that day at Lutheran General Hospital in Park Ridge, Illinois. The record is silent with respect to the results of the evaluation except to indicate that hospitalization was not required. Plaintiff resigned from the Hospital in the early part of 1986.

On August 26, 1986, plaintiff filed the instant action. Plaintiff's initial complaint was dismissed, and, on December 11, 1987, plaintiff filed a four-count amended complaint against the Hospital and White. Plaintiff's amended complaint sought recovery under theories of slander, "coercion," intentional infliction of emotional distress, and intentional interference with an employment contract. The amended complaint alleged that defendants accused plaintiff of alcohol or drug addiction or emotional instability and knew those accusations to be groundless. The amended complaint further alleged that plaintiff was

coerced into undergoing a psychiatric examination and that the substance of the accusations and psychiatric evaluation were communicated to persons who did not have a legitimate interest in that knowledge.

On January 26, 1988, defendants moved to dismiss plaintiff's amended complaint pursuant to sections 2—615 and 2—619 of the Code (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619). Defendants' motion was supported by a copy of the employment contract between plaintiff and the Hospital, the deposition transcript of Dr. Banta, and the affidavits of Dr. McHugh, White, and Longanecker. The trial court granted defendants' motion pursuant to section 2—619(a)(9) after concluding that defendants presented affirmative matter which defeated plaintiff's claims. Specifically, the court found that defendants' conduct fell within the provisions of certain statutes and the Hospital bylaws entitling them to immunity. The trial court subsequently denied plaintiff's motion to reconsider, and plaintiff brought this timely appeal.

■ Initially, we note that defendants' motion to dismiss was brought pursuant to both sections 2—615 and 2—619 of the Code (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619). It is improper for a defendant to combine separate motions under each of these sections for joint analysis and determination. (*Schlenz v. Castle* (1985), 132 Ill. App. 3d 993, 1002-03, *aff'd* (1986), 115 Ill. 2d 135; *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 508.) However, while this improper motion practice is error and should not be condoned, it does not command reversal unless prejudice results to the nonmovant. (*Schlenz,* 132 Ill. App. 3d at 1003; *Davis,* 108 Ill. App. 3d at 508.) The record in the instant action indicates that plaintiff knew prior to the hearing that defendants sought dismissal under either section of the Code. In addition, the court continued the hearing on the motion at which time plaintiff's counsel indicated that he was prepared to address defendants' motion pursuant to section 2—619. Accordingly, we conclude that plaintiff was not prejudiced by the procedure utilized and we may proceed to the merits of the case.

Plaintiff contends that the trial court erred in granting defendants' motion to dismiss. Plaintiff argues that defendants failed to state "affirmative matter" sufficient for dismissal pursuant to section 2—619(a)(9) of the Code. We disagree.

■ Section 2—619(a)(9) of the Code provides that a defendant may, within the time for pleading, file a motion to dismiss on the basis that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill.

Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) "Affirmative matter" sufficient to defeat a claim is something in the nature of a defense which negates the alleged cause of action completely or refutes crucial conclusions of law or conclusions of fact unsupported by allegations of specific fact contained in or inferred from the complaint. (*Andrews v. Mid-America Bank & Trust Co.* (1987), 152 Ill. App. 3d 139, 141.) It is something more than mere evidence offered to refute well-pleaded facts in the complaint which are necessarily admitted as true for purposes of the motion to dismiss. *Andrews*, 152 Ill. App. 3d at 141; *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 710; see *Venezky v. Central Illinois Light Co.* (1988), 168 Ill. App. 3d 612, 613-14.

■ In the instant action, the "affirmative matter" presented in support of defendants' motion to dismiss consisted of the Hospital by-laws and two Illinois statutes which purported to give defendants immunity for the actions taken by a hospital peer review committee. Although the trial court concluded that the immunity conferred by the statutes was conditional and did not protect defendants from any willful and wanton acts committed in the process, it nonetheless found that the affidavits submitted by defendants indicated that their conduct was reasonable under the circumstances and fell within the immunity provisions. Plaintiff now argues that the trial court's conclusion was error since plaintiff properly pleaded willful and wanton misconduct and defendants' affidavits only challenged those well-pleaded facts. However, in our opinion, section 10.2 of the Hospital Licensing Act (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2), relied on by both defendants and the trial court, provides defendants with *absolute* immunity for the conduct alleged and supports the judgment of dismissal.

In ruling that defendants were entitled to immunity for their alleged wrongful conduct, the trial court relied on section 5 of the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—5) and section 10.2 of the Hospital Licensing Act (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2). Section 5 of the Medical Practice Act of 1987 provides, in pertinent part:

"While serving upon any committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care or physician services within a hospital duly licensed under the Hospital Licensing Act, or within a professional association of persons licensed under this Act, or the improving or benefiting of patient care and treatment whether within a hospital or not, or for the purpose of professional discipline, any person serving

on such committee, and any person providing service to such committees, shall not be liable for civil damages as a result of their acts, omissions, decisions, or any other conduct in connection with their duties on such committees, except those involving wilful or wanton misconduct." Ill. Rev. Stat. 1987, ch. 111, par. 4400—5.

Section 10.2 of the Hospital Licensing Act similarly provides immunity from civil damages for actions taken by a hospital peer review committee. (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2.) That statute provides:

> "Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers. Therefore, no hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient." Ill. Rev. Stat. 1987, ch. 111½, par. 151.2.

Our supreme court has recently set forth these statutory provisions and noted that they "operate to grant immunity to physicians, hospitals and their staffs from civil liability for service upon peer review or other credential committees." (*Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 58; see also *Gates v. Holy Cross Hospital* (1988), 175 Ill. App. 3d 439, 446 ("in accordance with the Hospital Licensing Act, hospitals and their staff are immune from civil liability for services rendered while serving in the capacity of a medical care evaluation committee or peer review committee"); *Rodriguez-Erdman v. Ravenswood Hospital Medical Center* (1987), 163 Ill. App. 3d 464, 470 (section 10.2 of the Hospital Licensing Act precludes recovery of civil damages as a remedy in cases arising out of acts and decisions of hospitals and individuals in internal review situa-

tions).) The *Barrows* court went on to conclude that the statutes indicated "a general legislative intention that hospitals and medical staffs be free to exercise their professional judgment in the selection and retention of medical staff members." *Barrows*, 123 Ill. 2d at 58; see also *Rodriguez-Erdman*, 163 Ill. App. 3d at 469-70 (legislative objective in providing hospital with immunity for civil damages based on peer review activities is to foster effective self-policing by medical profession and promote legitimate State interest in improving quality of health care in Illinois).

Although the trial court in the instant action dismissed the complaint on the basis of the immunity conferred by these statutes, it nonetheless found that they conferred only conditional immunity. However, as noted above, we believe that section 10.2 of the Hospital Licensing Act grants defendants absolute immunity and controls the disposition of this appeal.

Unlike section 5 of the Medical Practice Act of 1987, which protects "any person" serving on a peer review committee (see Ill. Rev. Stat. 1987, ch. 111, par. 4400—5), section 10.2 of the Hospital Licensing Act is specifically directed at protecting *hospitals and agents and employees of hospitals* for the conduct of such committees. (See Ill. Rev. Stat. 1987, ch. 111½, par. 151.2.) Defendants in the instant action are a hospital and a member of its administrative staff. Thus, while both statutes grant immunity for the activities of a peer review committee, section 10.2 of the Hospital Licensing Act more directly applies to these particular defendants.

In addition, unlike section 5 of the Medical Practice Act of 1987, section 10.2 of the Hospital Licensing Act does not except willful and wanton misconduct from its protection. (See Ill. Rev. Stat. 1987, ch. 111½, par. 151.2.) The plain and unambiguous language of section 10.2 of the Hospital Licensing Act admits of no exception to the immunity protection conferred by that statute, and we will not read into it any exception for willful and wanton misconduct. (See *Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 1025.) In *Knapp*, the court similarly discussed the interplay between section 5 of the Medical Practice Act of 1987, at that time codified as section 2b of the Medical Practice Act (see Ill. Rev. Stat. 1985, ch. 111, par. 4406), and sections 8—2101 and 8—2102 of the Code (Ill. Rev. Stat. 1983, ch. 110, pars. 8—2101, 8—2102). (*Knapp*, 176 Ill. App. 3d at 1022-25.) The court noted that the Code provisions bestowed an absolute privilege upon individuals insofar as concerned their statements before bodies involved in the peer review process. (176 Ill. App. 3d at 1022.) The court further noted the immunity exception for willful and

wanton misconduct contained in section 2b of the Medical Practice Act and, concluding that the statutory provisions were in conflict, ruled that the Code provisions were more specific and therefore controlled the disposition. (176 Ill. App. 3d at 1025.) In holding that a willful and wanton misconduct exception could not be read into the Code provisions, the court stated that its "conclusion [was] reinforced by the *similarly absolute and unconditional language* of section 10.2 of the Hospital Licensing Act." (Emphasis added.) 176 Ill. App. 3d at 1025.

Because we conclude that section 10.2 of the Hospital Licensing Act completely negates plaintiff's claims, we find that the trial court did not err in granting defendants' motion to dismiss.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

WOODWARD, J., concurs.

JUSTICE NASH, dissenting:
I do not agree with the conclusion of my colleagues that section 10.2 of the Hospital Licensing Act (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2) provides *absolute* immunity for all of the conduct claimed by plaintiff and would remand for further proceedings of those well-pleaded counts of the complaint which alleged willful and wanton misconduct on the part of defendants.

In his amended complaint, plaintiff alleged that defendants made false and malicious accusations of alcohol addiction, drug addiction, and mental instability of plaintiff, knowing them to be false, groundless, and spurious, and that defendants forced plaintiff to undergo a psychiatric evaluation under threat of immediate suspension of his hospital privileges. In thus extending an absolute immunity for civil liability to those acting in a peer review capacity to include any of their willful and wanton conduct while doing so, the majority has gone substantially beyond the limitations placed upon such immunity by the Illinois legislature and has extended a recent ruling by our supreme court.

Section 10.2 of the Hospital Licensing Act and section 5 of the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—5) both extend in generally similar language immunity from civil liability to physicians, hospitals and their staffs for service upon peer review or other credential committees. It has been held that "these

statutes do indicate a general legislative intention that hospitals and medical staffs be free to exercise their professional judgment in the selection and retention of medical staff members." (*Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 58.) The immunity offered by each of these statutes, however, is qualified and is far from the absolute immunity here declared by the majority opinion.

Section 5 of the Medical Practice Act grants immunity for conduct while serving upon a peer review committee, "except those involving willful or wanton misconduct" (Ill. Rev. Stat. 1987, ch. 111, par. 4400–5). So too does section 10.2 of the Hospital Licensing Act provide that "[n]othing in this section shall relieve any individual or hospital from liability arising from treatment of a patient." (Ill. Rev. Stat. 1987, ch. 111½, par. 151.2.) The court in *Barrows v. Northwestern Memorial Hospital* considered both statutes and found, generally, that they operate to grant immunity from liability for service upon peer review or other credential committees (*Barrows*, 123 Ill. 2d at 58). The court declined to repudiate the doctrine that denial of hospital staff privileges is generally not subject to judicial review and that the decision of the hospital authorities in such matters is final, and affirmed the judgment of the circuit court which had dismissed that complaint on public policy ground. However, our supreme court remanded the case to the appellate court for consideration of whether the allegations in other counts of the complaint relating to interference with plaintiff's business relations, restrain of trade, and fraud were also precluded by the public policy against judicial review and the statutory enactments or were sufficient to support recovery under those counts of plaintiff's complaint. 123 Ill. 2d at 59-60.

In my view, this court should give attention to those limitations upon the peer review immunity put in place by the legislature, and the caution exercised by the court in *Barrows*. We have no authority to repeal the legislative exception to immunity for willful and wanton peer review conduct and do no service to the medical community by doing so. Under the opinion here, any baseless or malicious accusation against a physician or hospital can be made in a supposed peer review setting with impunity. The broad scope of the conduct in which immunity may attach under section 10.2 of the Hospital Licensing Act and this opinion will be far beyond that intended by the legislature.

I would affirm the judgment below dismissing the complaint, except as to those counts which were premised upon the alleged willful and wanton conduct of defendants and, as to them, would reverse and remand for further proceedings.