JACKIE MOHR, Plaintiff-Appellant, v. ARACHNID, INC., Defendant-Appellee.

Second District No. 2—89—1293

Opinion filed August 29, 1990.

Roberta L. Holzwarth, of Holmstrom & Green, P.C., of Rockford, for appellant.

Scott C. Sullivan and Timothy J. Rollins, both of Williams & McCarthy, of Rockford, for appellee.

JUSTICE DUNN delivered the opinion of the court:

The plaintiff, Jackie Mohr, appeals from the trial court's dismissal with prejudice of her complaint seeking severance pay from the defendant, Arachnid, Inc., her former employer. The trial court dismissed the complaint with prejudice on the basis that the agreement promising severance pay was not supported by any consideration on the part of the plaintiff. We reverse and remand.

At issue on appeal is whether an employee's continued work for her employer can constitute consideration which would support an express agreement to pay severance wages.

This litigation commenced with the filing of the plaintiff's original complaint on May 19, 1989. This complaint was dismissed because the plaintiff named the wrong defendant, and an amended complaint was filed on July 6, 1989. The amended complaint alleged that the plaintiff was employed as a secretary by the defendant in November 1987. The amended complaint also alleged that on February 13, 1989, the plaintiff and defendant entered into a written agreement for the payment of six months' severance pay should the plaintiff's employment cease. The agreement, which referred to the plaintiff as "Employee" and the defendant as "Employer," stated in part:

"WHEREAS, Employee is a key employee whose individual attention and loyalty to the Employer is essential to the Employer's day-to-day operation and financial success; and

WHEREAS, Employee is aware of a certain buy/sell agreement among the Employer's shareholders and of the exercise thereof; and

WHEREAS, the exercise of said buy/sell agreement has caused Employee and other key employees of Employer to become nervous, upset and distracted, including the consideration of employment elsewhere, to the financial detriment of Employer; and

WHEREAS, Employer desires to ease such nervousness and distraction through contractual arrangement of reassuring employment conditions.

NOW, THEREFORE, in consideration of the premises, it is agreed as follows:

1. Employee will continue to serve the Employer at the same or at an improved level of service as obtained prior to the exercise of the buy/sell agreement.

2. If after, but only after, a significant change in ownership of stock the Employer (significant being defined as 30 percent or more of total stock issue and outstanding) Employee shall be fired by new management, or Employee shall find conditions of employment intolerable such that Employee terminates employment with employer, then Employee shall be paid severance pay equal to six (6) months at Employee's present salary."

The agreement was to be effective only if termination occurred within one year of February 13, 1989.

The amended complaint further alleged that on February 24, 1989, the shareholder of the defendant corporation agreed to make a significant change in the ownership thereof, as one stockholder, Michael Tillery, would purchase the shares of another, Paul Beall. The plaintiff was notified on April 12, 1989, that her employment would terminate. The defendant paid the plaintiff only two weeks' severance pay.

The defendant filed a motion to dismiss the amended complaint pursuant to section 2—615 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) on the grounds that: (1) the plaintiff failed to allege that she was terminated after a 30% or more change in the ownership of stock in the defendant corporation; and (2) the agreement was void and unenforceable because it was unsupported by consideration on the part of the plaintiff. The plaintiff's response to the motion to dismiss attempted to refute both grounds.

The trial court held a hearing on the motion to dismiss on October 12, 1989. At the hearing, the plaintiff's attorney acknowledged that the complaint failed to allege that termination occurred after a 30% change in ownership, and she offered to amend the complaint to cure this omission. The trial court ruled that, on the issue of the sufficiency of the complaint, the defendant's motion to dismiss the complaint would be granted, but the plaintiff was given leave to file an amended complaint.

The court then heard argument on the defendant's motion to dismiss the complaint on that ground that the agreement was unsupported by consideration. The court took the matter under advisement and indicated that it would make a ruling on October 26, 1989. On that day, the court ruled that it would dismiss the amended complaint on the same basis articulated earlier and also because the agreement sued upon was not supported by consideration. The court issued a written order of this ruling on November 21, 1989, which noted that dismissal was made pursuant to both sections 2—615 and 2—619 of the Code (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). Only the

portion of the order corresponding to the consideration issue indicated that dismissal was to be with prejudice. The plaintiff now appeals from the November 21 order.

Initially, we must resolve the defendant's motion to dismiss the appeal. The defendant argues that the trial court's dismissal of the plaintiff's complaint pursuant to section 2—615 provided a separate basis for the dismissal of the plaintiff's complaint. Thus, the defendant argues, even if we reverse the trial court on the consideration issue, there exists a separate basis for the dismissal of the plaintiff's complaint. Though it is not phrased as such, the defendant appears to argue that this case presents the court with a nonjusticiable, moot question. We ordered the motion and the plaintiff's objections to it taken with the case.

■ The trial court here dismissed the same amended complaint on two separate bases, one with prejudice to refiling and one without. If we reverse the trial court's dismissal with prejudice, then the action will be restored to the status it held before that ruling, namely, the plaintiff would have an opportunity to file a second amended complaint to cure the insufficient pleading. Since our decision can effectively grant relief to the prevailing party, this appeal is not moot. (*Tumminaro v. Tumminaro* (1990), 198 Ill. App. 3d 686, 690-91.) Accordingly, we deny the defendant's motion to dismiss the appeal.

■ In a related matter, the plaintiff filed a motion to strike the affidavit of Michael Tillery which was submitted in support of the defendant's motion to dismiss the appeal. The affidavit states that the stock structure of the defendant corporation did not change before the plaintiff was terminated. This affidavit does not affect in any way our analysis concerning the mootness of the appeal; quite frankly, the relevance of the affidavit to the defendant's motion to dismiss is not clearly explained. There is no indication that the matters stated in the affidavit were ever presented to the trial court. Since it is not relevant to the question of mootness and is outside the record, we cannot consider the affidavit, and we therefore grant the plaintiff's motion to strike it. *Tumminaro*, 198 Ill. App. 3d at 691.

■ The plaintiff's first contention is that the defendant improperly converted a portion of its section 2—615 motion into a section 2—619 motion to dismiss. It is improper for a defendant to combine separate motions under each of these sections for joint analysis and determination. However, while this improper practice is error and should not be condoned, it does not command reversal unless prejudice results to the nonmovant. *Cardwell v. Rockford Memorial Hospi-*

*tal Association* (1989), 183 Ill. App. 3d 1072, 1075, *aff'd* (1990), 136 Ill. 2d 271.

 Here, the defendant's motion to dismiss purported to be one made under section 2—615. However, it is not clear that the defendant could not properly have raised the issue of whether there was sufficient consideration to support the agreement in a section 2—615 motion. (See *Davies v. Martel Laboratory Services, Inc.* (1989), 189 Ill. App. 3d 694, 696-97 (motion to dismiss under section 2—615 based on lack of consideration to support a contract of permanent employment).) Even if the issue should have been raised under section 2—619, the plaintiff did not object to the commingling of the two motions, nor did her response to the section 2—619 motion that the issue raised caught her off guard. In this situation, we do not find that the plaintiff was prejudiced by the combination of the two motions.

The plaintiff's second contention, and the central issue on appeal, is that the trial court incorrectly determined that the severance pay agreement was void and unenforceable for lack of consideration on the part of the plaintiff. The defendant, on the other hand, argues that the trial court correctly determined that the plaintiff's continued service in the defendant's employ was not valid consideration because the plaintiff was only doing that which she was already obligated to do.

 It is true that a promise to do something one is already obligated to do is not adequate consideration. (*Corroon & Black of Illinois, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, 162.) However, in *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489, the Illinois Supreme Court noted that, as a general rule, an employment relationship without a fixed duration is terminable at will by either party; an employee does not have an obligation to continue working for an employer. At issue in *Duldulao* was whether the policies spelled out in an employee handbook could constitute a binding contract. The court noted that, under some circumstances, an at-will employee's continuing labor can serve as consideration for a contract with the employer. *Duldulao,* 115 Ill. 2d at 490.

*Duldulao* established three criteria for determining whether policy statements in an employee handbook can create a binding contractual agreement. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after

learning of the policy statement. *Duldulao*, 115 Ill. 2d at 490.

The defendant contends that the *Duldulao* analysis is limited to situations involving employee handbooks and, therefore, is not relevant here. We agree that the question of whether policy statements in employee handbooks are binding is different from the question presented in this case. Here, the agreement in question is not implied from a handbook, but was entered into with specificity in a written document drawn up for such a purpose. As a result, we believe that the issue in this case, which is narrower than that in *Duldulao*, can nonetheless be resolved with reference to the *Duldulao* analysis. Though the first two prongs of the *Duldulao* analysis are addressed to the vagaries inherent in making a contractual *offer* via an employee handbook, the third bears directly on the issue raised here. In *Duldulao*, the court held that, where the employer makes an effective offer to an employee through policy statements in an employee handbook, "the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a contract is formed." *Duldulao*, 115 Ill. 2d at 490.

■ Here, there is no question that the defendant made an offer of severance pay to the plaintiff and that the plaintiff accepted the offer. Thus, *Duldulao* makes it clear that the plaintiff's continued work for the defendant after the agreement was entered into constitutes consideration sufficient to support the agreement.

The defendant argues that the plaintiff was not obligated to work any harder or any better as a result of the agreement and that, therefore, continuing to work for the defendant comprised only illusory consideration. We disagree. The agreement itself indicates that it was arrived at in order to entice the plaintiff to continue working in light of possible management changes which allegedly caused her to consider other employment. Thus, the agreement only sought that the plaintiff continue to work for the defendant, something which, as an at-will employee, she was certainly not obliged to do. This constitutes sufficient consideration to support the agreement. See *Adams v. Lockformer Co.* (1988), 167 Ill. App. 3d 93, 98.

The defendant also argues that the severance agreement represents a "scorched-earth" policy designed to saddle the company with liabilities to frustrate a change in corporate ownership. Because corporate officers and directors owe a fiduciary duty to the corporation (see *Dangeles v. Muhlenfeld* (1989), 191 Ill. App. 3d 791, 795-96), such conduct might be relevant in an examination of whether a duty was breached. The question presented here, however, is one of contract law, not one pertaining to corporate duties or authority. We cannot

change our contract-law analysis simply to address a possible abuse of corporate powers, especially when the latter issue has not been properly argued in that respect.

■■ Accordingly, we hold that the trial court erred when it determined that the plaintiff's continued work for the defendant could not serve as consideration for the severance pay agreement. We therefore reverse the court's order dismissing the amended complaint with prejudice and remand the cause for further proceedings upon the plaintiff's filing of a second amended complaint.

The order of the circuit court of Winnebago County is reversed and the cause remanded.

Reversed and remanded.

UNVERZAGT, P.J., and GEIGER, J., concur.